545 So.2d 289 (1989)
B.L. and R.W.H., Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Nos. 88-1825/88-1920.
District Court of Appeal of Florida, First District.
March 28, 1989.
Rehearing Denied July 20, 1989.
*290 Brian T. Hayes, of Brian T. Hayes, P.A., Monticello, for appellant B.L.
Ronald G. Meyer, of Meyer, Brooks and Cooper, P.A., Tallahassee, for appellant R.W.H.
B. Elaine New, Asst. Gen. Counsel, Dept. of HRS, Tallahassee, and Hala Mary Ayoub, of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee.
Mary Charlotte McCall, Law Offices of Paula Walborsky and Mary Charlotte McCall, Tallahassee, and Sandra C. de Pury and Elahna R. Strom, of Latham & Watkins, New York City, for amicus curiae The Nat. Committee for Prevention of Child Abuse.
WIGGINTON, Judge.
These consolidated appeals are from final orders of the Department of Health and Rehabilitative Services adopting the hearing officers' recommended orders and denying appellants' requests for expunction of reports of confirmed child abuse. Because we hold that there was competent and substantial evidence in the records to support the hearing officers' conclusions that the bruises inflicted constituted "child abuse" as contemplated by section 415.503(3), we affirm.
The facts in each case are nearly identical and involve the infliction of corporal punishment against two students by R.W.H., a dean of students, and B.L., a school principal. The punishment was administered in each instance according to statute and the administrative rules for disruptive behavior, and with parental consent. However, in each case, extensive bruising resulted that lasted approximately a week.
Determinations were made by the Department that appellants were confirmed child abusers, which fact was reported to appellants by letter. Each appellant then requested expunction of the record. Each request was denied.
Thereafter, administrative hearings were held wherein the hearing officers recommended that the requests for expunction be denied on the express basis that appellants' using a length of board to inflict bruises on a child that lasted longer than a week amounted to causing "temporary disfigurement" within the meaning of chapter 415, Florida Statutes (1987), even though a conscientious and dedicated educator was wielding the paddle. The Department adopted and incorporated by reference the findings of fact and conclusions of law of the hearing officers and in the case of B.L., ruled that the immunity provided by section 232.275, Florida Statutes, relates only to civil or criminal liability and does not relate to administrative classification, and furthermore, clearly states that immunity does not avail where "excessive force" has been used. The Department also specifically ruled that "[p]unishment which inflicts bruises on a child that lasts six to seven days is excessive force."
The statute relevant to a determination of child abuse in this case is section 415.503. Paragraph (3) defines child abuse as "harm or threatened harm to a child's physical or mental health or welfare by the acts or omissions of the parent or other person responsible for the child's welfare." "Other person responsible for a child's welfare" is defined in paragraph (12) as including an employee of a public or private school. Section 415.503(8)(a)1, defines *291 "harm" to a child's health or welfare as occurring when the other person responsible for the child's welfare "inflicts, or allows to be inflicted, upon the child physical or mental injury. Such injury includes, but is not limited to ... [1.] injury sustained as the result of excessive corporal punishment... ." In turn, section 415.503(13) provides that "physical injury" can mean temporary disfigurement.
In accordance with the statutory framework, the hearing officer in R.W.H. observed that "harm is proven by a showing of `temporary disfigurement or impairment,' ... unless `nonexcessive' corporal punishment causes the disfigurement or impairment." The hearing officer then determined that the case "presents the question whether striking a child's buttocks with a wooden paddle, so as to inflict bruises that last a week, constitutes excessive corporal punishment, where the child is not abnormally susceptible to bruises." The hearing officer considered R.W.H.'s concern that excessive force should not be inferred from the nature of a child's injuries and his argument that "[t]o conclude that the mere existence of a bruise or red mark lasting more than one hour can be proof of `excessive force' is an arbitrary and capricious presumption," where different people bruise based upon different degrees of force or physical makeup. Nonetheless, the hearing officer noted that not only did the marks last longer than an hour, the child's bruises lasted more than a week. The hearing officer also pointed out that the uncontroverted evidence was that the child did not bruise easily and that R.W.H.'s use of a length of board to inflict bruises on the child that lasted longer than a week amounted to causing "temporary disfigurement" even though R.W.H. was a recognized conscientious and dedicated educator.
The hearing officer in B.L. couched the issue in the same manner and found that the conclusions of the hearing officer in R.W.H. were equally applicable to B.L. In each instance, the hearing officers dismissed appellants' arguments that section 232.275 applied (providing for limited immunity from civil or criminal liability for any action carried out in conformity with the state board and district school board rules regarding discipline), on the basis that the statute has no application "in the case of excessive force."
Appellants' primary argument on appeal is their contention that the Department's use of "temporary disfigurement" as the "litmus test" for establishing child abuse has the effect of establishing an invalid conclusive presumption. In other words, it is appellants' contention that the Department has presumed a bruise equals child abuse in light of certain testimony by HRS personnel that the Department has a policy to determine excessive force based on whether there is a mark visible for either more than sixty minutes or more than twenty-four hours. Although appellants' argument might be meritorious under different circumstances where the Department's so-called "60-minute" nonrule policy was challenged or where the bruises inflicted in the instant cases lasted only sixty minutes or twenty-four hours, such argument has no application in the instant case where the hearing officers' conclusions are obviously based solely on the evidence presented.
In this case, the hearing officers and the Department were justified in concluding that the evidence of bruising lasting a week or more constituted evidence of excessive corporal punishment where it was established by evidence that the children were not abnormally susceptible to bruising, especially in the face of a statute that condemns excessive corporal punishment but fails to define "excessive." Although one might argue that the Department's remark in its final order entered against B.L. to the effect that "[p]unishment which inflicts bruises on a child that last six to seven days is excessive force," would appear to establish a conclusive presumption based on a 6- or 7-day "bruising rule," it is our opinion that that statement must be read in light of the hearing officer's findings of fact and conclusions of law in his recommended order which were based on the evidence and which were adopted and incorporated by reference by the Department *292 in its final order. However, to whatever extent the Department may have intended its statement to establish a conclusive presumption that bruising lasting six to seven days constitutes excessive force, we reject that position as amounting to a denial of due process. Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla. 1987).[1]
Although we are acutely aware of the stigma that may attach to appellants' careers as educators in light of these confirmed reports of child abuse,[2] as well as the precarious position in which we place other educators in this State when they determine to discipline unruly or obstreperous students by means of corporal punishment that is legislatively sanctioned and in accordance with school board policy, we must nonetheless affirm the orders of the Department of Health and Rehabilitative Services in the instant cases since they are based on competent and substantial evidence establishing child abuse as that term is specifically defined in section 415.503.
AFFIRMED.
WENTWORTH, J., concurs.
THOMPSON, J., dissents with written opinion.
THOMPSON, Judge, dissents.
I would reverse the final order of the Department of Health and Rehabilitative Services (HRS) and direct that HRS expunge the appellants' names from its confirmed child abusers list. In each case the hearing officer and HRS found that the school personnel used excessive force in corporally punishing two students, and concluded that punishment which inflicts bruises which last six or seven days on a child who is not abnormally susceptible to bruises is "excessive corporal punishment" as a matter of law. Such a finding is completely arbitrary and capricious. The terms "excessive corporal punishment" or "excessive force" are not defined by statute or even by a duly adopted rule of HRS. Instead, HRS's six- or seven-day "rule" is an unwritten policy which affects the substantial rights of various parties, including conscientious educators who apply corporal punishment in full compliance with state law and school board policy and rules.
Children vary greatly in their sensitivity to pain. They also vary greatly in their sensitivity to force and as to the degree of bruising which may result from corporal punishment. There are not merely two categories of children: those who are abnormally susceptible to bruises and those who are not. Varying degrees of susceptibility to bruising exist between the two extremes. Even the same child will have a different degree of bruising from the application of the same force by the same instrument depending upon whether he or she is relaxed. There is not one iota of medical or other expert testimony to support the validity of the arbitrary six- or seven-day bruising policy adopted by the hearing officers and HRS.
The majority protests that although HRS's "remark" in its final order that "punishment which inflicts bruises on a child that lasts six or seven days is `excessive force'" might appear to be a conclusive presumption based on a six- or seven-day "bruising rule," the remark must be read in light of the hearing officer's findings of act and conclusions of law which were incorporated by reference in HRS's final order. They conclude that to whatever extent HRS intended its statement to establish a conclusive presumption that bruising lasting six to seven days constitutes excessive force, they reject HRS's position as a denial of due process. This creation of a conclusive presumption is precisely the source of my concern regarding affirmance in this case. The record is absolutely *293 clear that HRS and the hearing officers not only intended to establish, but did establish, a conclusive presumption that bruising lasting six or seven days constitutes excessive force. In the case of R.W.H. the hearing officer found in his conclusions of law, not as a "remark," that, "the real issue joined by the parties is whether the bruising amounted to child abuse as defined by Section 415.503, Florida Statutes (1987)" and further found that, "this case presents the question of whether striking a child's buttocks with a wooden paddle, so as to inflict bruises that last a week, constitutes excessive corporal punishment, where the child is not abnormally susceptible to bruises." In the case of B.L. the hearing officer in his conclusions of law, not as a "remark," stated, "the real issue is whether such bruising constitutes child abuse as defined by Section 415.503, Florida Statutes (1987)," and further said, "the remaining question is whether striking a child's buttocks with a wooden paddle, so as to inflict bruises that last six or seven days, constitutes excessive corporal punishment when the child is not abnormally susceptible to bruises." The issues and conclusions of law by the hearing officer in each of these cases were identical, and resulted in a conclusion of law adopted by HRS that six- or seven-day bruising was per se "excessive force". Such a finding is arbitrary and capricious and amounts to an irrebuttable presumption that constitutes a denial of the appellants' due process rights.
There is no competent substantial evidence to support a finding of excess force. All the testimony reflects that the corporal punishment in each case was applied in compliance with state law and with school board rules and policies. It was applied with an appropriate instrument and it was applied in the usual manner. There was no evidence that the punishment was given in anger or with ill will, malice, or intent to injure.
Furthermore, HRS also has a policy that any bruise inflicted by corporal punishment which lasts for more than sixty minutes is conclusive evidence of a case of confirmed child abuse. As to its sixty-minute policy, an agent of HRS even testified, "I believe it is the public policy of the State of Florida." In fact, this policy is absolutely contrary to the policy and laws of the State of Florida. Section 232.27, Fla. Stat. specifically authorizes the use of corporal punishment to maintain control, discipline, and order in the educational system. I cannot conceive of any corporal punishment that would not leave some evidence only sixty minutes after it had been applied. Otherwise, it could hardly be considered to be punishment. It is obvious HRS is opposed to any corporal punishment under any circumstances. In view of that position, it should seek legislation to prohibit corporal punishment in schools, rather than adopting an unwritten arbitrary and capricious policy. Section 230.23(6)(c), Fla. Stat. specifically prevents local school boards from prohibiting the use of corporal punishment. There is no means under the present law for a school board to protect its educational personnel who apply corporal punishment from being stigmatized as confirmed child abusers by overzealous HRS personnel.
Furthermore, the only evidence that the bruises in these cases lasted more than six or seven days is testimony of the parents. If a parent files a complaint of child abuse eight or more days after the punishment was inflicted and states that the bruises lasted more than six or seven days, there is no possible way that an educator applying corporal punishment in full compliance with the laws of Florida and the rules and policy of the local school board can avoid being placed on the confirmed child abuse list. No amount of competent substantial evidence can overcome the irrebuttable presumption of excessive force that the parents' testimony creates. Even if an examination made immediately after the complaint was filed revealed no bruises, such examination would be insufficient to refute the parents' testimony the bruises lasted six or seven days.
I would reverse.
NOTES
[1] Thus, based on the foregoing analysis, we need not reach appellants' argument regarding the applicability of the immunity provided in section 232.275 to an administrative hearing since the evidence in any event established the inapplicability of that section on the basis that these cases indicated the use of excessive force.
[2] We do take note of appellee's representation, however, that employees of public schools are not among those who are statutorily disqualified from their employment by reason of a confirmed report of abuse on the abuse registry.